**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>MARC COHODES, an individual, and HOLBROOK HOLDINGS, INC., an Oregon Corporation,<br><br>　　　　　　　Defendants. | **CV-25-41-BU-JTJ**<br><br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Plaintiff State Farm Fire and Casualty Company ("State Farm") moves for summary judgment against Defendant Marc Cohodes ("Cohodes"). (Doc. 26.) Cohodes cross moves for summary judgment against State Farm. (Doc. 31.) The Court held a hearing on the motion on May 30, 2026. (Doc. 43.)

**BACKGROUND**

State Farm insures Cohodes under a Homeowners Policy. (Doc. 1 at ¶ 7.) The Homeowners Policy includes a personal liability limit of $100,000. (*Id*.) State Farm

1

further insures Cohodes under an umbrella policy with a personal liability limit of $6,000,000. (*Id*. at ¶ 8.)

Holbrook Holdings, Inc. ("Holbrook") filed a complaint against Cohodes in the U.S. District Court for the District of Montana, alleging a claim for defamation. (*Id*. at ¶¶ 10–11.) Holbrook further alleges that "Cohodes essentially bets against the stock prices of the companies that he shorts, with the hope that he will earn profits if the company's stock price goes down." (*Id*. at ¶ 11.) Cohodes allegedly "announces publicly [when he takes a short position] and then proceeds to levy attacks and criticism on his target company and its management, in the transparent hope that the negative publicity will cause the stock price to drop and benefit his position." (*Id*.)

Holbrook claims that Cohodes recently took a short position on the stock of an investment bank called B. Riley. (*Id*. at ¶ 12.) Offended, Holbrook posted a brief tweet critiquing Cohodes's actions and reputation. (*Id*. at ¶ 13.) Cohodes allegedly retaliated by tweeting three posts involving "childing insults" against Holbrook on December 17, 2023, February 29, 2024, and August 13, 2024. (*Id*. at ¶¶ 15, 22.) Holbrook claims that Cohodes's tweets represented "falsehoods" and fabrications "to punish Holbrook for having the temerity to question him." (*Id*. at ¶ 16.) Cohodes

2

allegedly accused Holbrook leadership "of breaching fiduciary duties to investors and engaging in securities fraud." (*Id*. at ¶ 18.)

Holbrook asserts that Cohodes acted intentionally and "with reckless disregard for the truth" as Cohodes "was aware at the time of publication that the statement was false or, at a minimum, had a high degree of awareness that the statement was probably false." (*Id*. at ¶¶ 20 & 23.) Holbrook further asserts that it suffered reputational harm from Cohodes's actions, resulting in economic damages for loss of revenue and enterprise value. (*Id*. at ¶ 21.)

State Farm filed a complaint against Marc Cohodes for declaratory relief on April 14, 2025. (*Id*.) State Farm contests its duty to defend and indemnify Cohodes for any judgment against him in the Holbrook lawsuit. (*Id*. at ¶ 25.)

## LEGAL STANDARD

A court may grant summary judgment when the movant demonstrates that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. When viewing the record in deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmovant and draw all

reasonable inferences in the nonmovants favor. *Tabares v. Huntington Beach,* 988 F.3d 1119, 1124 (9th Cir. 2021) (citations omitted).

## DISCUSSION

State Farm contends that it is entitled to summary judgment as a matter of law for the following reasons: (1) the umbrella policy provides no coverage to Cohodes in his lawsuit against Holbrook; and (2) public policy prohibits insurance coverage of Cohodes's intentional wrongdoing. (Doc. 27 at 14, 21, & 30.) State Farm next argues that given that the insurance policies fail to cover Cohodes, Holbrook cannot collect if it becomes a judgment creditor. (*Id.* at 31.) State Farm further asks the Court to disregard any reply brief on Cohodes's Motion for Summary Judgment as untimely. (Doc. 37 at 4.)

Cohodes, on his part, argues that he is entitled to summary judgment because the umbrella policy covers "libel" claims and no applicable exclusions in the umbrella policy defeat coverage. (Doc. 32 at 18–35.) Cohodes further counters that the umbrella policy's "Intent to Cause Harm Exclusion" is illusory and ambiguous, and, therefore, the umbrella policy violates Cohodes's reasonable expectations. (Doc. 39 at 11.) The Court will address each issue in turn.

### I.    Whether Cohodes Untimely Replied

The Court first addresses State Farm's request for the Court to strike Cohodes's reply as untimely. (Doc. 37 at 4.) Local Rule 7.1(d)(1)(C) provides a

4

moving party with the option to "file a reply within 14 days after the response was entered in the docket." However, a "motion is deemed ripe for ruling at the close of the time for response, unless otherwise indicated in the scheduling order." L.R. 7.1(d)(1)(D). For example, in *Barnard Pipeline, Inc. v. Travelers Property Casualty Company of America*, the court denied a party's motion to strike an opposing party's reply brief for untimeliness. 2014 WL 12543844, at \*4, n.2 (D. Mont. Apr. 28, 2014). The court determined that the opposing party timely filed its reply brief because the scheduling order indicated that "a motion is fully briefed upon receipt of a response brief," and the reply briefs remained optional under Local Rule 7.1(d)(C). *Id*.

The Court will consider Cohodes's reply. The Scheduling Order states that "[a]ll pretrial motions, other than discovery motions, shall be filed and fully briefed on or before April 17, 2026." (Doc. 25.) Cohodes cross-moved for summary judgment before the deadline. (Doc. 31.) Cohodes further filed his optional reply brief within 14 days from the filing of the response brief. (Doc. 39.)

## II.    Whether the Umbrella Policy Provides Coverage

The Court next addresses whether State Farm has a duty to defend and indemnify Cohodes against claims brought in the Holbrook lawsuit. (Doc. 27 at 14, 21, & 30.) An insurer's duty to defend "pertains" to an insurer's "duty to affirmatively defend its insured against pending claims." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005). "The duty to defend is triggered more easily than

5

is the duty to indemnify." *Id*. For instance, "where there is a duty to defend, there is not necessarily a duty to indemnify." *Id*. "The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). An insurer maintains a duty to defend unless the insurer "'unequivocal[ly] demonstrat[es] that the contested claim does not fall within the policy." *Nielsen v. TIG*, 442 F. Supp. 2d 972, 976 (D. Mont. 2006).

"The duty to indemnify relates to" an insurer's "duty to satisfy a judgment entered against the insured." *Skinner*, 127 P.3d at 364. "[T]he duty to indemnify does not arise unless the policy actually covers the alleged harm." *Id*. "A conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify." *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1011, 1107 (Mont. 2020).

### A.    Scope of Coverage

The Court first must determine whether Holbrook's claims against Cohodes fall within the umbrella policy's scope of coverage. The umbrella policy covers an insured party's defense "[I]f a suit is brought against any insured for damages because of a loss to which this policy applies . . ." (Doc. 28 at ¶ 10.) The umbrella policy defines "loss" as "a. an accident, including accidental exposure to conditions, which first results in 'bodily injury' or 'property damage' during the policy period. . ." or "b. the commission of an offense which first results in 'personal injury' during

the policy period." (*Id*. at ¶ 13.) The umbrella policy defines "personal injury" as any injury other than "bodily injury" arising from one or more offenses, including libel, slander, and defamation of character. (*Id*. at ¶ 14.)

Holbrook's complaint against Cohodes includes allegations that Cohodes made intentionally false statements, made statements with reckless disregard for the truth, and made statements with a high degree of awareness that they were probably false. (Doc. 1 at ¶¶ 16, 17, 20, & 23.) Holbrook's complaint also alleges these allegedly false statements caused it to suffer "reputational harm as well as economic damages." (*Id*. at ¶ 21.) The Court determines that these allegations fall within the umbrella policy's scope of coverage. They do so because they allege Cohodes committed the "offense" of "libel" resulting in Holbrook suffering "personal injury."

The Court must next determine if an exclusion applies to the Holbrook lawsuit to preclude coverage under the umbrella policy. The most pertinent policy exclusions to Cohodes's claim for coverage under the umbrella policy are (1) whether Cohodes acted "with specific intent to cause any harm" or (2) whether Cohodes acted in the pursuit of "business." The Court shall consider each of these exclusions. State Farm further raises the issue of whether the Court may consider Cohodes's declaration to determine coverage. (Doc. 27 at 26.) The Court shall first address this issue.

### B. Whether the Court May Properly Consider Cohodes's Declaration

State Farm contends that the Court and State Farm may solely rely on Holbrook's complaint and the umbrella policy to determine whether State Farm's duty to defend is triggered. (Doc. 27 at 26.) Cohodes asserts that State Farm may not ignore "colorable claims" of truthfulness in determining its duty to defend. (Doc. 39 at 4.) The general rule established in *Farmers Ins. Exch. v. Wessel* is that "'the complaint and the policy constitute the universe" of which a court may look to determine an insurer's duty to defend. 477 P.3d 1101, 1105 (Mont. 2020). Furthermore, an insured party's simple denial of claims in the underlying complaint generally would fail to "trigger coverage." *Id*. at 1106.

However, "an insurer's duty to defend" triggers when an insurer "is aware of factual information that would otherwise" place an insured party's claims within the scope of policy coverage. *Revelation Indus., Inc., v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 926 (Mont. 2009); *see also Nat'l Indemnity Co. v. Montana*, 499 P.3d 516, 528 (Mont. 2021) ("[A]n insurer's duty to defend may arise from an insurer's knowledge of 'facts obtained from outside the complaint.'"). The Montana Supreme Court has recognized that "an insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint—which is, after all, drafted by a claimant over whose draftsmanship the insured has no control— does not allege these facts of which the insurer has knowledge." *Revelation Indus.*, 206 P.3d at 928.

The District of Montana has followed *Revelation Industries* rationale to conclude that a court and an insurer should consider affirmative defenses raised in an answer if the facts in the answer sufficiently demonstrate "colorable claims" to bring the claims within the scope of coverage. *Allstate Vehicle & Property Ins. Co. v. Frank*, 687 F. Supp. 3d 1033, 1045–46 (D. Mont. 2023) (citing *Wessel*, 477 P.3d at 1101.) The dispute in *Frank* involved an altercation between a plaintiff and the insured party. *Id*. at 1038. The underlying complaint failed to allege facts constituting a covered "occurrence." *Id*. at 1042. The insured party asserted self-defense as an affirmative defense in an amended answer. *Id*. at 1044. The court distinguished between the issue of whether the insured party had acted in self-defense and the fact that the insured party had asserted self-defense. *Id*. at 1045. The former being "certainly disputed" while the latter remained undisputed. *Id*. Because the insured party had asserted an affirmative defense and the insurer had been aware of the affirmative defense, the insurer was not at liberty "to ignore this factual information when evaluating its duty to defend." *Id*. at 1044.

Rejecting to apply the more limited *Wessel* rule, the court found that the insured party presented "a colorable claim of self-defense" distinct from merely denying the factual allegation in the underlying complaint. *Id*. at 1046. The court deemed the insured party's affirmative defense "colorable" considering the allegations brought forth in the underlying complaint. *Id*. at 1047. The court also

reviewed an affidavit introduced by the insured that included information contradicting the allegations within the underlying complaint. *Id*. The information in the affidavit "certainly bolster[ed]" the insured's affirmative defense but the court noted that "considering only the allegations in the underlying complaint," the insured party had "raised a colorable claim of self-defense." *Id*.

The Court shall consider Cohodes's answer to Holbrook's complaint to determine whether coverage applies in this context. Cohodes does not merely deny the facts. *Cf. Wessel*, 477 P.3d at 1106. Cohodes asserts the defense of truthfulness and that he had no malicious intent in publishing his tweets. Like *Frank,* where it was undisputed that the insured asserted the affirmative defense of self-defense, the parties here do not dispute that Cohodes asserts the defense of truthfulness. *Frank*, 687 F. Supp. 3d at 1045. State Farm has long been aware of Cohodes' truthfulness defense as Cohodes filed his answer in response to the Holbrook complaint on December 30, 2025, and State Farm has since been defending Cohodes under a reservation of rights. Cohodes' affirmative defense of truthfulness sufficiently demonstrates a "colorable claim" falling within the scope of coverage. *Frank*, 687 F. Supp. 3d at 1046–47.

Cohodes's declaration "certainly bolsters" his truthfulness defense. *Frank*, 687 F. Supp. 3d at 1047. However, even standing alone, Cohodes's answer to Holbrook's complaint sufficiently demonstrates that Cohodes has presented a

"colorable claim," falling within the scope of coverage under the umbrella policy. *Id*.

### C. Whether the Business Pursuit Exclusion Applies

Cohodes argues that the business exclusion would not preclude coverage in this instance because "Holbrook does not allege Cohodes's X posts arose out of his trade, profession or occupation" and Holbrook does not allege that Cohodes intended to profit from his tweets by shorting Holbrook's stock. (Doc. 32 at 23.) State Farm counters with the fact that Holbrook does allege Cohodes intended to short B. Riley's stock. (Doc. 27 at 19; Doc. 37 at 8.)

The umbrella policy excludes coverage "for any" "loss arising out of any insured's business property or business pursuits of any insured[.]" (Doc. 28 at ¶ 16.) The umbrella policy defines "business" as "a trade, profession or occupation, including farming." (*Id*. at ¶ 12.) The business pursuits exclusion applies where allegations demonstrate that an insured "continually or regularly conducted" an activity in the pursuit of "profit." *Heggen v. Mountain West Farm Bureau Mut. Ins. Co.*, 715 P.2d 1060, 1062 (Mont. 1986).

Although Holbrook's complaint alleges that Cohodes "essentially bets against the stock prices of the companies that he shorts, with the hope that he will earn profits if the company's stock price goes down," in Cohodes' Statement of Disputed Facts, he states that his purposes in posting the subject tweets was to share the truth with

11

the investing public about Holbrook and the dangers he believed its funds posed to investors and to defend himself against Holbrook's own defamatory tweets against him. (Doc. 33 at ¶¶ 46 and 47.) Cohodes further states that he had no profit motive nor did he make any profit from his posts concerning Holbrook. (*Id*. at ¶ 51.)

Given the factual dispute concerning the reasons and motivations for Cohodes posting the tweets about Holbrook, State Farm has not unequivocally demonstrated that the business pursuits exclusion applies to Cohodes's statements about which Holbrook complains. Rather, a genuine dispute of material fact remains as to whether Cohodes acted in the pursuit of business in relation to the allegedly false statements he made.

### D. Whether the Specific Intent to Cause Harm Exclusion Applies

The Court next determines whether the intent to cause harm exclusion applies to Holbrook's claims against Cohodes. State Farm's policy excludes coverage for "personal injury when the insured acts with specific intent to cause any harm." (Doc. 28 at ¶ 16). State Farm argues that because Holbrook alleges that Cohodes intended to harm Holbrook's reputation, its intent to harm exclusion precludes coverage for Holbrook's claims against Cohodes. (Doc. 27 at 23.) Montana federal courts have recognized an exception to the finding that defamation is per se intentional when the insured claims truthfulness. *See Am. Bankers Ins. Co. v. Cameron*, 2021 U.S. Dist. LEXIS 174639, at *13 (D. Mont. Sept. 14, 2021). (Doc. 39 at 9.)

12

The insurer in *Cameron* denied coverage of a claim against its insured in an action involving allegations against the insured for libel and intentional infliction of emotional distress. 2021 U.S. Dist. LEXIS 174639, at *2. The insured allegedly posted false statements on Facebook. *Id*. The policy language excluded coverage for acts "expected or intended by an 'insured;' even if the resulting 'bodily injury' or 'property damage' is of a different kind, degree or quality than initially expected or intended; or is sustained by a different person, entity real or personal property." *Id*. at *5.

The court determined that the insurer owed a duty to defend even when the complaint from the underlying lawsuit alleged facts showing an intent to cause harm. *Id*. The court recognized that the nature of "defamation is often not intended or expected to injure anyone." *Id*. at *13 (quoting *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 746 (7th Cir. 2001)). The court further distinguished the facts that "the defamer may have made a good-faith though inadequate attempt to conceal the victim's name, may have thought the victim's reputation already impaired beyond possibility of further damage, or the most common case, may have thought the defamatory statement true, in which event there would be no injury in a legal sense." *Id*.

Although Holbrook's complaint alleges that Cohodes acted intentionally when he posted purportedly defamatory and libelous statements on X, Cohodes's

13

answer to this complaint alleges that his statements were true or at the very he least thought they were true given the "months of careful research and interaction with other investors, using decades of experience identifying fraud and accounting improprieties." (Doc. 33 at ¶ 44 & Doc. 34-1 at 13.). As such, the intent to cause harm exclusion does not unequivocally preclude State Farm from defending Cohodes for Holbrook claims. *Nielsen*, 442 F. Supp. 2d at 976.

## E. Whether the Specific Intent to Cause Harm Exclusion is Illusory, Ambiguous, or Violates the Reasonable Expectations Doctrine

Cohodes argues that the "intent to cause harm exclusion" in the umbrella policy "creates an inherent ambiguity, illusory coverage, and violates the reasonable expectations of the insured." (Doc. 39 at 11.) The Court disagrees.

Montana courts follow "the well-established principle that when the language of a policy is clear and explicit, the policy should be enforced as written" when interpreting insurance policy provisions. *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2009). An insurance contract proves ambiguous if it is "'reasonably subject to two different interpretations.'" *Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 865 (Mont. 2013). A court considers "the viewpoint of a consumer with average intelligence but untrained in the law or the insurance business" when assessing whether an insurance contract provision is "reasonably susceptible to two different interpretations." *Id*. (quoting *Modroo*, 191 P.3d at 395.) "Because insurers draft the language of insurance contracts and the

14

object of an insurance contract is to give protection to the insured, we construe ambiguous provisions 'against the insurer and in favor of extending coverage.'" *Id.* at 866. However, an insurance contract provision is not ambiguous "just because a claimant says so or just because the parties disagree as to [its] meaning . . .." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 673 (Mont. 2009) (internal citations omitted).

No inconsistency or ambiguity exists between the umbrella policy's definition of personal injury, including libel and defamation, and its exclusion of intentional acts causing harm. *United Nat'l Ins. Co.*, 214 P.3d at 1265; *see also Fisher*, 305 P.3d at 865. The exclusion plainly precludes coverage of intentional acts with a specific intent to cause any harm. The very nature of defamation does not often require the intent to cause harm. *Cameron*, 2021 U.S. Dist. LEXIS 174639, at *13 ("[D]efamation is often not intended or expected to injure anyone."). As the court in *Fisher* recognized, "umbrella policies are written to provide broad coverage for numerous risks against third parties." 305 P.3d at 870. An average consumer would understand that the umbrella policy would continue to cover claims of libel or defamation if the insured did not have a specific intent to cause any harm. *Id.* at 865.

The "'reasonable expectations doctrine' mandates that, unless the terms of an insurance policy 'clearly demonstrate an intent to exclude coverage,' an insurance buyer's 'objectively reasonable expectations' regarding the nature of the policy

15

'should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations.'" *U.S. Specialty Ins. Co. v. Estate of Ward*, 444 P.3d 381, 385 (2019). Likewise, the umbrella policy at issue here "clearly" establishes "an intent to exclude coverage" for "personal injury" where an insured acts with specific intent to cause harm. *Id*. Therefore, the umbrella policy is not illusory or ambiguous, nor does it violate Cohodes's reasonable expectations. *Fisher*, 305 P.3d at 865; *U.S. Specialty Ins. Co.*, 444 P.3d at 385.

### III.    Whether Public Policy Prohibits Insurance Coverage of Intentional Wrongdoing

State Farm contends that public policy prohibits coverage of Cohodes's claims because the Holbrook lawsuit alleges willful wrongdoing. (Doc. 27 at 30.) The Montana Supreme Court recognized this point in *Safeco Ins. Co. of Am. v. Liss*, 16 P.3d 399 (2000). In *Liss*, the insured party had shot the plaintiff in the underlying complaint for allegedly having an affair with the insured party's spouse. *Id*. at 401. The insured party pled *nolo contendre* to the charge of aggravated assault. *Id*. at 401–402. The Montana Supreme Court acknowledged that "public policy forbids indemnifying willful wrongdoing." *Id*. at 404. However, the Montana Supreme Court held that the insurer's "duty to defend and indemnify" the insured party could not "be excused by a declaratory judgment" based on public policy grounds. *Id*. at 405. The plaintiff had "maintain[ed] that the shooting was an accident" and the insured party "may have acted involuntarily." *Id*.

16

Because Cohodes maintains the defense of truthfulness and that he had no malicious intent in publishing his tweets, the Court shall not enter summary judgment to excuse State Farm from its duty to defend and indemnify on public policy grounds at this time. *Id*. No definitive finding has arose yet from the Holbrook lawsuit as to whether Cohodes acted intentionally.

**IV.    Whether a Coverage Decision on the Duty to Indemnify is Ripe.**

Cohodes argues that State Farm cannot unequivocally demonstrate a lack of coverage without a resolution in the Holbrook lawsuit and, therefore, State Farm maintains a duty to defend Cohodes. (Doc. 32 at 36.) Cohodes asks the Court to stay any determination on State Farm's duty to indemnify until resolution of the Holbrook suit. (*Id*.) The Court agrees.

Montana law "caution[s] against determining questions of indemnity until liability is established in the underlying proceeding." *Safeco Ins. Co. of Am. V. Grieshop*, 2021 WL 1209564, at *12 (D. Mont. Mar. 31, 2021) (quoting *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551, *3 (D. Mont. Mar. 30, 2018)). "Typically, a claim for declaratory judgment regarding an insurer's duty to indemnify is not ripe until there has been a resolution of the underlying claim." *Grieshop*, 2021 WL 1209564, at *12; *Skinner*, 127 P.3d at 363. The Court shall defer ruling on the matter of indemnity until resolution of the Holbrook lawsuit. *Grieshop*, 2021 WL 1209564, at *12; *Skinner*, 127 P.3d at 363.

**CONCLUSION**

The Court denies State Farm's Motion for Summary Judgment. State Farm has not unequivocally demonstrated that the contested claims in the Holbrook lawsuit fall outside its policy coverage. *Nielsen*, 442 F. Supp. 2d at 976. State Farm is also not entitled to summary judgment on its claim that public policy prohibits coverage in this case. *Liss*, 16 P.3d at 522. Materially disputed facts remain as to whether Cohodes acted with willful wrongdoing. *Id*.

State Farm lastly argues that it is entitled to summary judgment that Holbrook cannot collect against State Farm as a judgment creditor because Cohodes has failed to establish coverage. (Doc. 27 at 31.) A dispute of material fact exists as to whether coverage applies. Therefore, the Court denies summary judgment of this claim.

The Court grants, in part, and denies, in part Cohodes's Motion for Summary Judgment. (Doc. 31.) Cohodes is entitled to summary judgment that State Farm owes a duty to defend him in the Holbrook lawsuit. Cohodes is not entitled summary judgment that the policy is ambiguous, illusory, and violates his reasonable expectations as an insured. *Fisher*, 305 P.3d at 865; *U.S. Specialty Ins. Co.*, 444 P.3d at 385. The intent to cause harm exclusion does not conflict with the umbrella policy's coverage for personal injury resulting from the intentional torts of defamation and libel. The Court declines to rule on the matter of indemnity until

18

resolution of the Holbrook lawsuit. *Grieshop*, 2021 WL 1209564, at *12; *Skinner*, 127 P.3d at 363.

### ORDER

Accordingly, **IT IS HEREBY ORDERED** that State Farm's Motion for Summary Judgment (Doc. 26) is **DENIED**. Cohodes's Motion for Summary Judgment (Doc. 31) is **GRANTED** in part, and **DENIED**, in part.

DATED this 5th day of August 2026.


John Johnston
United States Magistrate Judge

19